IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILILNOIS
EASTERN DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, ) | |
| ) | Case No. 12 C 10006 |
| Plaintiff, ) | |
| v. ) | Judge John Z. Lee |
| ) | |
| DOES 1-100 d/b/a the aliases identified on ) | Magistrate Judge Maria Valdez |
| Schedule "A", ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Deckers Outdoor Corporation ("Plaintiff" or "Deckers") has sued Defendants DOES 1-100 ("Defendants") for federal trademark infringement, counterfeiting and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), cyberpiracy in violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), and deceptive practices in violation of the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. § 510, *et seq*. Plaintiff is a fashion brand that produces and distributes high-end footwear products, most prominently UGG® brand products. Deckers sells UGG® brand products throughout the United States and in Illinois via a network of authorized retailers, Concept Stores and on its website, with the domain name <www.uggaustralia.com>. Deckers holds the registration for the UGG® trademark in more than 100 countries worldwide, including U.S. Trademark Registration No. 3,050,925.

Plaintiff alleges that Defendants, individuals and business entities who reside in the People's Republic of China or other foreign jurisdictions, operate commercial websites targeting Illinois residents with offers to sell counterfeit UGG® products. Deckers contends that Defendants use a variety of domain names set up by registrants (the "Accused Domain Names")

1

and create websites that incorporate copyright-protected content, images, and product descriptions to mislead consumers into believing that they are purchasing genuine UGG® products.

On December 20, 2012, the Court granted Deckers' *ex parte* motion for entry of (1) a temporary restraining order ("TRO"); (2) a domain name transfer order; (3) an asset restraining order; (4) an expedited discovery order; and (5) an order permitting service of process by email and electronic publication. Defendants were served with notice of the preliminary injunction proceedings and the TRO. On December 28, 2012, this Court extended the time for the TRO to remain in effect (through 3:00 p.m. on January 16, 2013) on Plaintiff's motion, finding that Plaintiff had demonstrated good cause for the extension. On January 15, 2013, the Court held a hearing on Plaintiffs' motion for a preliminary injunction. No Defendant appeared at the preliminary injunction hearing or submitted any written objection to the motion. For the reasons set forth below, Plaintiffs' motion for entry of a preliminary injunction is granted.

## Discussion

A party seeking a preliminary injunction must show (1) that its case has "some likelihood of success on the merits," and (2) that it has "no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied." *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party meets these threshold requirements, the district court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The district court's weighing of the facts is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief."

*Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895-96 (7th Cir. 2001) (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)). The Court addresses each factor in turn.

**I. Likelihood of Success on the Merits**

   **A. Trademark Claims**

Under the Lanham Act, a defendant is liable for federal trademark infringement and counterfeiting if the defendant "without the consent of the registrant . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(a). Section 43(a) of the Lanham Act further imposes liability upon a defendant who "on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the . . . origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1). Under the UDPTA, a defendant is liable for, among other things, (1) passing off goods as those of another; (2) causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods; or (3) causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with another. 815 Ill. Comp. Stat. 510/2(a).

Deckers' Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011); *Morningware, Inc. v. Hearthware Home Prods., Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the Illinois Uniform Deceptive Trade

3

Practices Act also form the basis for plaintiff's claims under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.") (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)). Moreover, "the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a likelihood of confusion?" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (internal citations omitted).

A trademark infringement claim under the Lanham Act has two elements. *See* 15 U.S.C. § 1125(a). First, the plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, the plaintiff must show that "the challenged mark is likely to cause confusion among consumers." *Id.* A court will not reach the second element "until persuaded that the mark is sufficiently distinctive to warrant prima facie protection as a trademark." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir. 1992).

When considering whether a particular mark is protected under the Lanham Act, the law recognizes five categories of trademarks, in ascending order of distinctiveness: generic, descriptive, suggestive, arbitrary, and fanciful. *See Two Pesos*, 505 U.S. at 768; *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). A plaintiff with a trademark registered in accordance with the Lanham Act is entitled to one of two presumptions: (1) that his registered trademark is not merely descriptive or generic; or (2) that if descriptive, the mark is accorded secondary meaning. *See Packman*, 267 F.3d at 638. Secondary meaning exists "only if most consumers have come to think of the mark not as descriptive at all but as the name of the

4

product." *Id.* at 639. A defendant may overcome this presumption with evidence that the mark is merely generic or descriptive, or that it lacks secondary meaning. *Id.*

In this case, Deckers is entitled to the presumption that its marks are protected under the Lanham Act because it holds valid and subsisting registrations for trademarks in the United States. (Evert-Burks Decl. ¶ 3.) Deckers has not licensed or authorized Defendants to use any of its UGG® trademarks. (*Id.* ¶ 20.) Defendants have put forth no evidence that the UGG® trademarks registered by Deckers are merely generic or descriptive. Thus, Deckers satisfies the first element of its Lanham Act claim.

In determining whether a plaintiff satisfies the second element of a Lanham Act claim, that the challenged mark is likely to cause confusion among consumers, the Seventh Circuit has identified seven relevant factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Here, Deckers has submitted extensive documentation showing that Defendants are selling counterfeit versions of UGG® products. (Evert-Burks Decl. ¶ 17.) Both Deckers and Defendants advertise and sell their products over the Internet, targeting consumers looking for UGG® merchandise. (*Id.* ¶¶ 11, 17-20.) Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing authentic UGG® merchandise from counterfeit products. Indeed, it appears that Defendants are intentionally trying to induce

consumers looking for genuine UGG® products to purchase fake products instead. In that regard, Defendants use the UGG® trademark in many of their Accused Domain Names, and they advertise products that look almost exactly like authentic UGG® products and bear the UGG® logo. (Compl., Schedule A.) Although Deckers does not offer evidence of actual consumer confusion at this time, such evidence is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine UGG® merchandise. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

Taking the evidence as a whole, the Court believes that Deckers is likely to establish a prima facie case of trademark infringement and false designation of origin under the Lanham Act and the UDPTA sufficient to support the entry of a preliminary injunction.

### B. Cyberpiracy

Deckers also sues Defendants for cyberpiracy in violation of the ACPA. The ACPA was enacted to combat "cybersquatting," which is "the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Vulcan Golf, LLC v. Google Inc.*, 726 F. Supp. 2d 911, 915 (N.D. Ill. 2010) (quoting *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1099 (C.D. Cal. 2009)). Cybersquatters "register well-known marks to prey on customer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site." *Id.* To state a claim under the ACPA, Deckers must show that "(1) it had a distinctive or famous mark at the time the domain name was registered, (2) the defendant[s] registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant[s] had a bad faith intent to profit

from that mark."[1]  *MasterCard Int'l Inc. v. Trehan*, 629 F. Supp. 2d 824, 830 (N.D. Ill. 2009) (quoting *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 914 (N.D. Ill. 2007)).

Here, the UGG® trademarks are well-known among fashion consumers worldwide, as evidenced by the extensive media coverage of the brand, including popular magazines like *Time*, *Vogue* and *Elle*.  (Evert-Burks Decl. ¶¶ 12-13.)  International celebrities including Kate Moss and Jennifer Aniston are frequently photographed in UGG® products. (*Id.* ¶ 13.)  Additionally, Defendants register, traffic in and use domain names that are identical or confusingly similar to the well-known UGG® mark.  As described above, many of Defendants' Accused Domain Names directly incorporate the word "UGG" and Defendants use copyrighted photographs of UGG® products and logos in order to sell counterfeit versions of them.  These facts manifest a bad-faith intent to profit from the UGG® mark.  Therefore, the Court finds that Deckers is likely to succeed on the merits of its ACPA claim.

## II.  Irreparable Harm/Inadequate Remedy at Law

Having determined Deckers is likely to succeed on the merits of its claims, the Court next considers whether the company will suffer irreparable harm without a preliminary injunction, and whether the company has an adequate remedy at law.  There is a "well-established presumption that injuries arising from Lanham Act violations are irreparable, even absent a showing of business loss."  *Abbott Labs.*, 971 F.2d at 16; s*ee also AM Gen. Corp. v.*

---

[1] The ACPA identifies nine factors to consider in assessing bad-faith intent, including: (1) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark; (2) the person's provision of material and misleading false contact information when applying for the registration of the domain name; (3) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others; and (4) the extent to which the mark incorporated in the person's domain name is not distinctive or famous.  15 U.S.C. § 1125(d)(1)(B)(i).  A court is not limited to considering only the enumerated factors, and "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case.'"  *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 268 (4th Cir. 2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

*DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (confirming "the law's presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law."). "This willingness to find irreparable harm in trademark cases stems from an understanding that the 'most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.'" *7-Eleven, Inc. v. Spear*, No. 10 C 6697, 2011 WL 830069, at *6 (N.D. Ill. Mar. 3, 2011) (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)).

Deckers has submitted evidence that it has spent substantial sums of money to market the UGG® brand in the United States and abroad. (Evert-Burks Decl. ¶¶ 5-7.) The UGG® brand has earned numerous awards and accolades, including Brand or Boots of the Year awards for the years 2004, 2007, 2008, 2010 and 2011 from *Footwear Plus*, and was selected as one of Forbes Best 200 Small Companies numerous times. (*Id.* ¶ 8.) As noted, popular magazines and television shows have covered the success of the UGG® brand, celebrities are frequently photographed wearing UGG® footwear, and Deckers regularly promotes its products with extensive, international advertising campaigns. (*Id.* ¶ 10, 12-15.) The Court finds that Defendants' unauthorized use of the UGG® trademark threatens to irreparably harm the reputation and goodwill Deckers has developed with respect to its merchandise. This risks diluting the mark and undermining the years Deckers has spent "nurturing its business." *Ty, Inc.*, 237 F.3d at 903. Thus, the Court finds that Deckers will suffer irreparable harm without a preliminary injunction, and that there is no adequate remedy at law for this harm.

**III. Balancing the Harms/Public Interest**

Because Deckers has met the threshold requirements necessary for the Court to grant its request for a preliminary injunction, the Court now weighs the factors against one another and assesses whether the balance of harms favors Deckers or whether the harm to the Defendants or the public is sufficiently weighty that the injunction should be denied. In balancing the harms between Deckers and Defendants, the Court applies a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor." *Girl Scouts of Manitou Council v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984)). Here, Deckers has a strong likelihood of prevailing on the merits, leaving Defendants with a proportionately small chance of showing that they have any right to sell or market counterfeit UGG® merchandise. As a result, Defendants have little basis for arguing that they will suffer any harm by virtue of the preliminary injunction. Indeed, as one court has noted, "one who adopts the marks of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotations omitted).

The public interest also weighs in favor of entering a preliminary injunction. *See Girl Scouts of Manitou Council*, 549 F.3d at 1086 (the balancing process should encompass "any effects that granting or denying the preliminary injunction would have on nonparties."). In trademark infringement cases such as this, "the public interest is served by [an] injunction because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). The public has an interest in not being confused or defrauded into buying counterfeit UGG® products.

In sum, Deckers is likely to succeed on the merits of its claims, and the balance of the harms weighs in its favor. On these facts, the Court holds that Deckers has satisfied its burden of establishing the prerequisites for entry of a preliminary injunction.

## IV. Specific Equitable Relief

Deckers asks that the TRO entered by this Court on December 20, 2012 be converted into a preliminary injunction so that Defendants remain enjoined from the manufacture, importation, distribution, offer for sale, and sale of products bearing counterfeit UGG® trademarks during the pendency of this litigation. Pursuant to the TRO, Deckers caused dozens of PayPal accounts associated with Defendants' websites to be frozen. (Gaudio Decl. ¶ 2.) Deckers also served the TRO on the relevant domain-name registries, requesting transfer of the Defendants' names. (*Id.*) Deckers argues that a preliminary injunction is necessary so that the domain names remain in Deckers' control and the Defendants' PayPal and other accounts remain frozen until completion of these legal proceedings. Without this relief, Defendants would be able to continue to sell counterfeit UGG® products and move monies from such sales to offshore accounts.

In sum, the Court holds that, under all the circumstances presented, the preliminary injunction that Deckers seeks is necessary and appropriate.

## V. Conclusion

For these reasons, the Court grants Plaintiff's motion for entry of a preliminary injunction.

**SO ORDERED.**                          **ENTER:  January 16, 2013**

_____
The Honorable John Z. Lee
U.S. District Judge